UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| MARCUS HUNT,<br>Petitioner,<br>v.<br>BRIAN WILLIAMS, *et al.*,<br>Respondents. | Case No. 2:14-cv-01054-RFB-NJK<br><br>**ORDER** |

**I.      INTRODUCTION**

Before the Court is this amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 22. Respondents have answered the petition (ECF No. 26), and Petitioner Marcus Hunt has replied (ECF No. 32).

For the reasons below, the Court will schedule an evidentiary hearing in this case.

**II.     BACKGROUND**

Hunt challenges his state court conviction, pursuant to a guilty plea, of conspiracy to commit robbery and robbery with use of a deadly weapon. Ex. 26.[1] The charges stemmed from an incident in which two males, one of them about 6'2" and 250-260 pounds, entered the apartment of Chauntille Roberts and John Box at gunpoint. See Exs. 2 & 3. After ordering Roberts and Box to the bathtub and tying them up, the suspects left with various items stolen from the home, including a Playstation 3, in a white, possibly Pontiac, four door sedan. Exs. 2 & 3. The Playstation was later recovered from the EZ Pawn store, having been pawned there by a person

---

[1] The exhibits cited in this order, which comprise the relevant state court record, are located at ECF Nos. 23 & 24.

using a Nevada driver's license for Marcus Hunt. Ex. 3. A records check revealed Hunt to be about 275 pounds and 6' tall, while another revealed him to be 275 pounds and 6'2". Id. In addition, surveillance footage was obtained showing Hunt entering the EZ Pawn store to pawn the Playstation. Id. Hunt was arrested while driving a white Oldsmobile four door sedan, which, like a Pontiac, is a General Motors vehicle, and which shares a common body structure with Pontiacs. Id. Roberts identified Hunt from a photo line-up. Id.

Hunt was initially charged with conspiracy to commit robbery, burglary while in possession of a firearm, first degree kidnapping with use of a deadly weapon, and possession of stolen property. Ex. 4. On November 3, 2011, Hunt entered a plea of guilty to conspiracy to commit robbery and robbery with use of a deadly weapon. Exs. 17 & 18. He was represented at the time by Ronald Paulson, Esq. At the change of plea hearing, the trial court canvassed Hunt in relevant part as follows:

| | |
|---|---|
| The Court: | Did you read through the guilty plea agreement? |
| The Defendant: | Yes. |
| The Court: | Did you discuss it with your attorney? |
| The Defendant: | Yes. |
| The Court: | Did you read it, discuss it, with your attorney before you signed it? |
| The Defendant: | Yes. |
| . . . . | |
| The Court: | Did you understand everything in the guilty plea agreement? |
| The Defendant: | Yes. |
| The Court: | Do you have any questions about anything contained in this guilty plea agreement that you didn't understand? |
| The Defendant: | I had a long time to look over it. |
| . . . . | |
| The Court: | Did anybody promise you anything not in this guilty plea agreement? |

| | | |
|---|---|---|
| The Defendant: | No. | |
| The Court: | Did anybody threaten you or coerce you to get you to plead guilty? | |
| The Defendant: | No. | |
| The Court: | Are you pleading guilty because you are actually guilty? | |
| The Defendant: | Yes. | |
| . . . . | | |
| The Court: | Once again, you are entering this plea of guilty freely and voluntarily because in truth and fact you are actually guilty, and for no other reason, is that true? | |
| The Defendant: | Correct. | |

Ex. 18 (Tr. 3-10).

On November 29, 2011, Hunt filed a *pro se* motion to dismiss Paulson and for appointment of new counsel. Ex. 19. Hunt asserted that Paulson failed to communicate with him or investigate his case and that he had only five minutes to decide whether to take the plea offer. Id. at 3-4. He claimed that Paulson made him take the plea. Id. at 4. New counsel was appointed, and on April 4, 2012, counsel filed a motion to withdraw the guilty plea on Hunt's behalf. Ex. 20. Hunt argued that Paulson told him that his mother thought he should enter the plea, which was in fact not true, and that Hunt took the plea only because he thought his mother wanted him to; thus, he argued, his plea was not knowing and voluntary. Id. at 6.

The trial court conducted an evidentiary hearing. Exs. 22 & 23. At the hearing, Paulson testified that initially Hunt "made it very clear . . . he wasn't going to be accepting deals [and h]e wanted to take this case to trial," but that they started discussing negotiations after the trial court ruled on their motions to suppress and dismiss. Ex. 23 (Tr. 12). When a plea offer was extended toward the end of September 2011, Hunt indicated that he wanted to talk to his family, specifically his mother, about the offer. Id. at 5, 13. Hunt did, and he told Paulson that it seemed like his family was encouraging him to consider it, but that he had not made up his mind. Id. at 5-6. Paulson spoke to Hunt's mother on November 2, 2011 and told her he believed Hunt should take the plea. Id. at 8. Paulson "very clearly remember[ed] both [Hunt's] mother and I agreeing that

ultimately the decision had to be Mr. Hunt's." Id. at 9. Hunt's mother told Paulson that she had talked to Hunt the day before. Id. After the conversation, Paulson tried to get in touch with Hunt but the jail was on lockdown, so he was not able to talk to Hunt until the next day. Id. at 9-10. Paulson testified that he "may have [told Hunt] that I talked to your mother, and it seems like she wants you to take the deal, but ultimately it has to be your choice." Id. at 10.

Hunt testified that at the time he took the deal, he had very little contact with his mother and when he entered the plea he was "under the impression that my mother said take the deal." Id. at 15. He said he never asked for a deal and that he "always wanted to go to trial always." Id. at 16. When asked if he had a long time to contemplate the guilty plea agreement, Hunt indicated that he had. Id. at 16. Hunt did not dispute that his mother told him, more than once, that ultimately it was his decision, but he testified that she was initially opposed to a deal. Id. at 16-17. He made his decision to plea thinking his mother was in support of it and stated he would not have pled if he had known his mother was not in support of it. Id. at 18. He testified that he understood it was his decision to take the plea but said: "At the same time it is a family decision. . . . When I do time, they do time. [My mother] has to take care of my kids if I am gone. . . . All I have is my mother. I don't have anybody else." Id. at 17.

The trial court denied the motion to withdraw. Ex. 23 (Tr. 19). It held:

> I went through this so carefully with this guy. He is a big boy. The fact that his mother says don't take it, too bad. He pled. I asked him every single question you can ask. He thoroughly contemplated the deal. He took the deal. I am not unwinding it. The motion to withdraw the plea is denied.

Id. at 18-19. Hunt appealed, arguing that he had not entered his plea knowingly and voluntarily. Exs. 25 & 27. The Nevada Supreme Court affirmed. Ex. 29.

Hunt then filed a state habeas petition, asserting, in part, that Paulson rendered ineffective assistance of counsel when he advised Hunt that his mother recommended, Jhe take the plea, and that his plea was, as a result, not knowing and voluntary. Ex. 31. The trial court denied relief, and the Nevada Supreme Court affirmed. Exs. 36 & 38. Thereafter, Hunt filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### III. LEGAL STANDARD

28 U.S.C. § 2254(d) provides the legal standards for this court's consideration of the merits of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693-694 (2002). This court's ability to grant a writ is limited to cases where "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." Harrington v. Richter, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)); see also Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." Andrade, 538 U.S. 63 (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000), and citing Bell v. Cone, 535 U.S. 685, 694 (2002)).

///

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Andrade, 538 U.S. at 74 (quoting Williams, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. Id. (quoting Williams, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. E.g., Lambert v. Blodgett, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. Id. The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." Id. at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

Taylor v. Maddox, 366 F.3d 992, 1000 (9th Cir. 2004); see also Lambert, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. Hunt bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. Cullen, 563 U.S. at 181.

**IV.  DISCUSSION**

"A habeas petitioner is entitled to an evidentiary hearing if: (1) the *allegations* in his petition would, if proved, entitle him to relief; and (2) the state court trier of fact has not, after a full and fair hearing, reliably found the relevant facts." Phillips v. Woodford, 267 F.3d 966, 973 (9th Cir. 2001). "In other words a federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the relevant facts." Townsend v. Sain, 372 U.S. 293, 312–13 (1963), overruled in other part by Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992). The

1  Court in <u>Townsend</u> lays out the various circumstances in which an evidentiary hearing can be
2  required, including where the state court held a hearing on the issue but did not actually decide the
3  issues of fact tendered by the defendant. <u>Id.</u> at 313–14. The applicable reasoning in <u>Townsend</u>
4  continues to apply post-AEDPA. See <u>Hurles v. Ryan</u>, 752 F.3d 768, 791 (9th Cir. 2014).

The amended petition asserts two grounds for relief: (1) Hunt's right to due process under the Fifth and Fourteenth Amendments was violated because his guilty plea was not voluntary, knowing and intelligent; and (2) Hunt's right to the effective assistance of counsel under the Sixth and Fourteenth Amendments was violated because counsel coerced Hunt into pleading guilty by way of a misrepresentation.

A guilty plea is coerced, and therefore void, if it is "induced by promises or threats which deprive it of the nature of a voluntary act." <u>Iaea v. Sunn</u>, 800 F.2d 861, 866 (9th Cir. 1986) (quoting <u>Machibroda v. United States</u>, 368 U.S. 487, 493 (1972)). "To determine the voluntariness of the plea, we look to the totality of the circumstances, examining both the defendant's 'subjective state of mind' and the 'constitutional acceptability of the external forces inducing the guilty plea.'" <u>Doe v. Woodford</u>, 508 F.3d 563, 570 (9th Cir. 2007) (quoting <u>Iaea</u>, 800 F.2d at 866). "[C]oercion applied by the accused's counsel can render a plea involuntary." See <u>Iaea</u>, 800 F.2d at 867–68.

If Hunt can prove that his attorney falsely represented Hunt's mother's statements and can show a reasonable probability that he otherwise would not have pled guilty, Hunt is entitled to relief on both of his claims. See <u>Iaea v. Sunn</u>, 800 F.2d 861, 868 (9th Cir. 1986). The state trial court held an evidentiary hearing but did not find the relevant facts − or any facts at all. Instead, the trial court unreasonably suggested that coercion was an impossibility because Hunt was "a big boy." The trial court further unreasonably stated that even if Hunt's mother had said Hunt should not take the plea and the attorney had lied to Hunt, that was simply "too bad." The trial court proceeded from the false premise that if he was making his own decision his mother's opinion of the plea deal could not have substantially influenced his decision. But it is both possible and reasonable that a false statement about Hunt's mother's opinion on the plea deal could coerce Hunt into changing his mind about the plea, especially in light of the undisputed testimony that his mother's opinion was a crucial if not dispositive factor in his decision to plead and his testimony

that his mother would be his children's caretaker in the event of his incarceration.

Because the state trial court unreasonably failed to find the relevant facts and the Nevada Supreme Court unreasonably upheld the decision on the merits absent necessary findings, Hunt will prevail under the AEDPA standard if the facts alleged in his petition prove true. The Court will therefore hold an evidentiary hearing to determine whether Paulson falsely represented Hunt's mother's position on the plea to Hunt and, if so, whether there is a reasonable probability that Hunt would not have pled guilty absent such misrepresentation.

**I.     CONCLUSION**

**IT IS ORDERED** that an evidentiary hearing regarding Petitioner's Amended Petition for Writ of Habeas Corpus (ECF No. 22) is scheduled for January 4, 2019 at 1:30 PM in LV Courtroom 7C before Judge Richard F. Boulware, II.

DATED: December 17, 2018.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**